**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE        :       ID: S2305011667
                                :
      vs.                        :
                                :
KAVOUN CANNON,          :
                                :
      Defendant.           :
                                :

Submitted: January 19, 2024
Decided: January 30, 2024

*Upon Defendant's Motion to Suppress,* **GRANTED.**

## <u>MEMORANDUM OPINION</u>

Nichole Gannett, Esquire, Deputy Attorney General.

Zachary George, Esquire, Attorney for Defendant.

**Robinson, J.**

Kevoun Cannon ("Cannon") has moved to suppress DNA results that link him to a gun, arguing that the search warrant for his DNA lacked sufficient probable cause. The State opposes Cannon's motion and filed a written response. Because the sole issue is the sufficiency of the probable cause contained within the four corners of the search warrant, there is no need for a hearing. For the reasons explained below, the motion to suppress is GRANTED.

The search warrant recites the following facts. On May 22, 2023, Corporal Howard of the Laurel Police Department ("Howard") responded to a complaint of a domestic incident in Hollybrook Apartments. Upon arrival, Howard found a female who was visibly upset, standing next to a car with a broken window. She told Howard that she and her boyfriend, Cannon, had argued and she locked herself in her car to get away from him. Cannon then allegedly broke the window of the car to get to her and fled from the scene with her car keys. Howard followed the route Cannon took but could not locate Cannon or the car keys. On his way back to the scene of the incident, Howard noticed a gun and a fanny pack underneath a parked car. He looked in the fanny pack and saw suspected marijuana, drug paraphernalia, several Black & Mild cigars, and loose change. Howard secured the gun and the fanny pack as evidence.

Later that evening, Howard returned to the scene after police received a 911 call that Cannon was attempting to break into the same woman's apartment. Howard

arrested Cannon at the apartment. Howard interviewed Cannon who denied that the gun and fanny pack were his. Cannon mentioned that he and the woman had been smoking Black & Mild cigars earlier that day.

The day after Cannon's arrest, Howard reviewed several surveillance videos from the apartment complex that showed Cannon in the area where the first domestic incident occurred and near where Howard found the gun and fanny pack. Howard noted that Cannon was wearing the same clothing he was arrested in and saw that Cannon had a fanny pack slung over his shoulder that resembled the fanny pack found at the scene.[1] Howard also noticed Cannon appeared to have a heavy object in his pocket in the videos, but that Cannon's pockets were empty when he was arrested later that night.[2]

Based on the above information, Howard obtained a search warrant to collect a sample of Cannon's DNA.[3] At the time, Howard had not collected DNA from the gun, and he did not know if DNA could be collected. In other words, he sought a DNA sample from Cannon in case DNA was later recovered from the gun.

---

[1] The fanny pack had a shiny gold zipper and a white, rectangular patch on the bottom right front.

[2] In its response, the State claims that Howard also viewed surveillance footage that showed Cannon pause next to the car where the fanny pack and gun were found and thereafter he is no longer seen with the fanny pack. The State claims that the footage shows the police car arriving on the scene, suggesting that Cannon discarded the fanny pack—and presumably the gun—when he saw the police arriving. These facts, however, are not in the search warrant so they will not be considered.

[3] Howard noted in the warrant that Cannon's criminal history indicated he had been arrested three times for having a firearm and was twice arrested with both marijuana and a gun in a backpack. This information is extraneous and will not be considered in this decision.

Cannon argues that the search warrant lacks a nexus between his DNA and the gun because Howard could only speculate that DNA would be recovered from the gun. He cites to a line of Delaware cases beginning with *State v. Campbell*, which held:

> [T]he Court does believe more is required than the detective's unsupported belief that DNA may be recovered from an object. At a minimum, the assertions made in the affidavit must be supported by training, education, or experience that would reasonably justify and explain the detective's conclusion that DNA could reasonably be recovered from that particular object. On occasion, this will be easy to justify simply from the object being tested, such as blood or semen. On other occasions, when the object is one on which DNA is not routinely found because of the properties of that object, more justification for the search will be needed.[4]

In *State v. White*,[5] this court followed the *Campbell* court's rejection of the approach taken by some other states: that warrants for a suspect's DNA are automatically insufficient if there is not a DNA sample already recovered from a piece of evidence. The *White* court determined that the warrant must show a "fair probability" that a DNA sample would be found on an object.[6] In *State v. Riley*, this court granted the defendant's motion to suppress, finding that the search warrant was "completely devoid of any reference to [the officer's] experience leading him to believe that

---

[4] 2015 WL 5968901, at *5 (Del. Super. Ct. Oct. 5, 2015). In *Campbell*, the police did not recover DNA from the objects recovered, so the court determined the issue was moot.

[5] 2017 WL 1842784, at *4 (Del. Super. Ct. May 8, 2017).

[6] *Id*. at *5. In the *White* case, the court denied the defendant's motion to suppress. The evidence in that case was a tight-fitting mask found at the scene. A tight-fitting mask would likely have the wearer's DNA on it. Also, the suspect's fingerprints were found on the mask.

[there] was a fair probability that evidence would be found on the seized .40 caliber and ammunition recovered from [the d]efendant's residence that would be linked to the victim's murder or shell casings found at the crime scene."[7] Likewise, in *State v. Bell*, this court suppressed evidence recovered from a DNA search warrant because the warrant did not include any information about the affiant's training or experience and did not describe the likelihood that DNA would be recovered from an object.[8] This court reached a similar conclusion in *State v. Lovett*.[9]

The search warrant in the present case is comparable to those in *Campbell*, *Riley*, *Bell*, and *Lovett* in that it fails to articulate either the affiant's training and experience sufficient to support his conclusion that DNA would be recovered from the gun, or that there was a fair probability that DNA would be recovered from the gun. Although Howard states his credentials at the beginning of the warrant (including where and for how long he has been employed and when he graduated from the police academy) and that he believes a DNA sample "would provide" necessary evidence to prosecute Cannon, these statements are not sufficient to establish probable cause.

The State also argues that even if the search warrant is deemed insufficient, alternative theories such as the search incident to arrest exception or the independent

---

[7] 2019 WL 3976038, at *6 (Del. Super. Ct. Aug. 20, 2019).
[8] 2019 WL 4507853, at *3-4 (Del. Super. Ct. Aug. 28, 2019).
[9] 2020 WL 5870259, at *4-5 (Del. Super. Ct. Oct. 2, 2020).

source doctrine would allow the DNA evidence to be admitted at trial. First, the court in *Riley* considered a similar argument, and as in *Riley*, the search incident to arrest argument is easily dispatched. Delaware's search incident to arrest statute, 11 *Del. C.* § 2303, requires that the search be incidental and contemporaneous to the arrest. This search was neither. Howard arrested Cannon on May 23, but did not obtain the warrant until June 4. Second, the State makes a passing reference to the independent source exception,[10] but it only argues that Cannon's DNA would have been inevitably discovered.[11] This argument likewise fails because it was not inevitable DNA would be found on the gun. As it happens, DNA was found, but at the time of the drafting of the warrant, it was unknown whether DNA would be on the gun.

For the reasons stated above, Cannon's motion to suppress his DNA sample collected under the search warrant is GRANTED.

---

[10] The warrant notes that Cannon had been convicted of several felonies and that he was on probation at the time of the arrest, which would indicate a sample of his DNA was collected and included in a database. *See* 29 *Del. C.* § 4713(b). If his DNA was in a database, then that would constitute an independent source.

[11] The State is correct that this case would have been prolonged if the police first had to wait for the gun to be tested before obtaining the warrant for Cannon's DNA sample. The timeline of the DNA testing results is not in the record, but the DNA sample was likely obtained around the time of the search warrant that was issued on June 4. In his motion to file the motion to suppress out of time, defense counsel states that he did not get the DNA laboratory results until December 1, 2023.